**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TOSCA K. SCHMIDT and DIANE MAURIELLO, <br><br> Appellants, <br><br> v. <br><br> SN SERVICING CORPORATION, <br><br> Appellee. | Case No. 22-cv-01313 (SDW) <br><br> **OPINION** <br><br> February 9, 2023 |

**WIGENTON**, District Judge.

Before this Court is Appellants Tosca K. Schmidt and Diane Mauriello's ("Appellants") Appeal of the Bankruptcy Court's March 3, 2022 Order (the "Order"), (*see* D.E. 1). Jurisdiction is proper pursuant to 28 U.S.C § 158(a)(1). The appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78. For the reasons discussed below, this Court **AFFIRMS** the Bankruptcy Court's Order.

**I.  BACKGROUND AND PROCEDURAL HISTORY**

A.  Factual and Procedural History

This Court, writing for the parties, sets out only those facts necessary to decide the present appeal. On October 2, 2007, Appellants borrowed $860,000.00 as a mortgage loan ("the Mortgage") on a residential property located in Ridgewood, New Jersey ("the Property"), and executed a Mortgage Note indicating the Mortgage was secured by the Property. (*See* D.E. 11 at

1

8; D.E. 15, Ex. A; D.E. 15, Ex. B.)[1] During the proceeding years, the Mortgage Note was assigned to multiple subsequent secured creditors before assignment to SN Servicing Corporation ("SN Servicing" or "Appellee").[2] (D.E. 11 at 9–12; D.E. 15 at 7, Ex. C.) On February 1, 2011, Appellants defaulted on their obligation to pay the Mortgage. (D.E. 11 at 9; D.E. 15 at 7, Ex. D.) The creditor that held the note at the time commenced foreclosure proceedings.[3] On May 5, 2017, the State Court issued final judgment in the foreclosure matter in favor of the creditor. (D.E. 11 at 10; D.E. 15 at 7, Ex. E.) Appellants challenged the final judgment in a Motion to Vacate Final Judgment, which was denied on October 23, 2017. (D.E. 11 at 10.)

On July 19, 2018, Appellants filed a petition under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey.[4] (D.E. 15 at 7.) On October 3, 2018, the matter was converted to a Chapter 11 filing. (*Id.*). On April 8, 2020, Defendant filed a Motion for Relief from Automatic Stay ("Motion for Stay Relief"), so that the creditor could pursue foreclosure remedies. (D.E. 11 at 12; D.E. 15 at 7, Ex. F.) On August 11, 2020, the Bankruptcy Court ordered Appellants to complete a sale of the Property by December 2020 and ordered that if the sale was not complete by then, the automatic stay would be lifted. (D.E. 11 at 13; D.E. 15 at 7–8, Ex. H.) Appellants failed to meet the Court-imposed deadline to sell the Property. (D.E. 15 at 8.) Appellants then filed an Adversary Complaint ("AC") alleging

---

[1] All citations to "DE" refer to docket entries in the instant appeal. Exhibits submitted by the parties will be cited as "Ex." and the corresponding letter referenced in the applicable brief. Appellants did not upload electronic copies of the exhibits referenced in the briefs, and only provided hard copies of the exhibits to this Court. This Court will reference the exhibits as cited in the briefs, as there is no viable alternative citation method for referencing hard copies.

[2] SN Servicing is a service for secured creditor U.S. Bank Trust National Association as Trustee of the Cabana Series IV Trust. (D.E. 15 at 8.)

[3] Superior Court of New Jersey, Chancery Division, Bergen County, No. F-007698-11. (D.E. 11 at 9; D.E. 15 at 7, Ex. D.)

[4] Case number 18-24461-RG in the District of New Jersey Bankruptcy Court.

2

that Appellee committed a fraud upon the Court and violated the New Jersey Consumer Fraud Act. (*Id.* at 8, Ex. J.)  On January 3, 2020, Appellee moved to dismiss the AC.  (*Id.* at 8, Ex. K.)  Appellants did not file an opposition, and instead filed an Amended AC on February 12, 2021, which—as the Court noted on March 9, 2021—was inappropriately filed, but the Court did not explicitly reject the amendment.  (*Id.* at 8, Ex. L, Ex. M.)  On October 1, 2021, the Bankruptcy Court granted Appellee's Motion to Dismiss, and on December 2, 2021, the Court entered an Order dismissing the Amended AC ("Dismissal Order").  (D.E. 15 at 9, Ex. O, Ex. P.)  On January 3, 2022, Appellants filed a Motion to Reconsider the Dismissal Order.  (*Id.* at 9, Ex. R.)  On February 3, 2022, the Bankruptcy Court held a hearing concerning the timeliness of the Motion to Reconsider.  (*See* D.E. 11, Ex. F.)  On February 9, 2022, the Bankruptcy Court recorded the reasoning undergirding its decision to deny the Motion to Reconsider,[5] and the Bankruptcy Court then issued a corresponding Order denying the Motion on March 3, 2022.[6]  (D.E. 11 at 14, Ex. F; D.E. 15 at 9, Ex. S.)  The matter was converted back to a Chapter 7 petition on April 19, 2022. (*Id.* at 7.)

---

[5] Appellants provided this Court with a hard-copy excerpt from a draft transcript recorded on February 9, 2022, in which the Bankruptcy Court discussed its decision concerning the Reconsideration Motion and the underlying merits of the Dismissal Order.  This Court will reference the hard copy Exhibit of the draft transcript excerpt as if it were incorporated into the corresponding brief, D.E. 11.

[6] In the Reply Brief for this Appeal, Appellants assert that the Bankruptcy Court held an additional reconsideration hearing on August 23, 2022, in which the Bankruptcy Court considered a supplemental certification from Appellants' counsel concerning why Appellants' Motion to Reconsider was not timely filed.  (D.E. 16 at 9.)  Appellants purport that the Bankruptcy Court "implicitly considered Counsel's certification ("Exhibit C") as new material which [sic] it had apparently decided to consider," and then reiterated its denial of Appellants' Motion to Reconsider.  (*Id.*)  The hearing purportedly occurred months after the commencement of this Appeal—and after opposition briefing was submitted, Appellants did not provide this Court with a copy of the hearing transcript, and Appellants did not provide any subsequent Order pertaining to the hearing, if an Order was issued.  The Bankruptcy Court appears to reiterate the outcome its previous denial, and Appellants did not present any additional Order for consideration; thus, it does not impact this Court's decision.

Appellants filed the instant Appeal on March 11, 2022, and the Appeal was fully briefed[7] as of August 29, 2022. (*See* D.E. 1; D.E. 11; D.E. 15; D.E. 16.)

B. Decision Hearing

The Honorable Rosemary Gambardella, U.S.B.J., held a hearing on October 1, 2021, during which she explained the reasoning undergirding the decision later memorialized in the Dismissal Order. (*See* D.E. 15, Ex. O (Transcript of October 1, 2021 Bankruptcy Court decision hearing ("B.C.D.H. Tr.")).)[8] During the hearing, the Court considered Defendant SN Servicing's Motion to Dismiss Plaintiffs Schmidt and Mauriello's Amended AC. (*See generally id.*) The Court set forth on the record a comprehensive review of the facts and procedural history leading to the Amended AC, and Plaintiffs' and Defendant's various arguments. (B.C.D.H. Tr. 4:13–31:23.) The Court reviewed in exhaustive detail the crux of the four counts Plaintiffs alleged in the AC, noting in particular the addition of a report from Plaintiffs' expert, Marie McDonnell, and recounted Plaintiffs various arguments and allegations. (*Id.*) The Court also discussed in great detail Defendant's arguments concerning standing, res judicata, judicial estoppel, the Entire Controversy Doctrine, and the *Rooker-Feldman* Doctrine. (*Id.*)

After comprehensively detailing the parties' arguments, the Court then proceeded to a thorough analysis of its decision on Defendant's Motion to Dismiss. The Court first discussed the legal standards for 12(b)(1), which is applicable to bankruptcy matters by Bankruptcy Rule 7012, and 12(b)(6) motions. (B.C.D.H. Tr. 31:24–33:19.) The Court then reviewed the import of the

---

[7] Appellants submitted an additional letter requesting oral argument, (D.E. 17), and two more letters containing personal medical information and other incomprehensible information that is not germane to this appeal, (D.E. 18; D.E. 19). This Court denies Appellants' request for oral argument, and disregards the additional information provided, as it was inappropriately submitted and is irrelevant to deciding this Appeal.

[8] Because Appellants only provided a hard-copy excerpt of the transcript, (D.E. 11, Ex. E), and did not provide the entire hearing transcript, and because Appellee provided a hard copy and pdf copy of the entire transcript, (D.E. 15, Ex. O), for the sake of simplicity this Court will cite only the complete transcript provided by Appellee.

*Rooker-Feldman* Doctrine—that it bars suit when a "federal decision in federal court would require negating or reversing the state court judgment"—and presented the four *Rooker-Feldman* factors: (1) "the federal plaintiff lost in state court"; (2) "the plaintiff complains of injuries caused by the state court judgment"; (3) "the judgment was rendered before the federal suit was filed"; and (4) "the plaintiff is inviting the federal court to review and reject the state court judgment." (B.C.D.H. Tr. 33:20–34:17 (citing *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159 (3d Cir. 2010); *In re Knapper*, 407 F.3d 573 (3d Cir. 2005)).)  The Court then discussed its "power to set aside a judgment for fraud upon a court," explained that such a showing must "be supported by clear, unequivocal, and convincing evidence," and recited the applicable law. (B.C.D.H. Tr. 35:2–37:7.) Judge Gambardella next explained the purpose of judicial estoppel and the applicable test, the purpose of equitable estoppel and waiver, as well as the applicable analyses. (B.C.D.H. Tr. 37:8–39:10.) The Court then briefly discussed the provisions of New Jersey's Consumer Fraud Act. (B.C.D.H. Tr. 39:11–40:6.)

After setting forth the applicable legal standards, the Court commenced an exhaustive analysis of each Count of the Amended AC. (B.C.D.H. Tr. 40:7–47:4.) In Count I, Plaintiffs sought "to expunge [D]efendant's lien on the [P]roperty on the basis that the mortgage on the [P]roperty is predatory, and that [D]efendant cannot prove standing or a complete and adequate chain of title." (B.C.D.H. Tr. 40:12–16.)  The Court found that Plaintiffs' "challenges to the underlying validity of the State Court foreclosure judgment are barred by the *Rooker-Feldman* Doctrine." (B.C.D.H. Tr. 40:17–20.) Analyzing each of the *Rooker-Feldman* factors, the Court determined that (1) Plaintiffs lost in state court and were "subject to a final judgment of foreclosure entered against them on May 5, 2017"; (2) Plaintiffs complain of an injury caused by the state court judgment by "challenging standing to foreclose" and "challenging representations or

5

misrepresentations made by the secured creditor in the state court action," thus are essentially challenging "the underlying validity of the foreclosure . . . and state court foreclosure judgment"; (3) the state court judgment was rendered in 2017, which occurred before the federal suit was filed in 2018 and the adversary proceeding was filed in 2020;[9] and (4) Plaintiffs are requesting that the Court "review and reject the 2017 foreclosure judgment" and "look back behind the validity of the foreclosure proceeding, and the subsequent judgment that was entered by the Superior Court of New Jersey." (B.C.D.H. Tr. 40:17–41:20.)

The Court explained that Plaintiffs were asking the Court to "look at the bona fides of the prior foreclosure judgment, and not simply to adjudicate a separate and independent cause of action." (B.C.D.H. Tr. 41:21–42:7.) Even though Plaintiffs were alleging fraud, the Court did not find that it had jurisdiction over the claims because "the *Rooker-Feldman* Doctrine does not protect [P]laintiffs' attempt to overturn a state court foreclosure judgment by cloaking the objections to the state court's decision in the veneer of fraud." (B.C.D.H. Tr. 42:8–17 (citing *Davis v. Fein Such Kahn & Shepard PC*, No. 18-8560, 2019 WL 1789471 (D.N.J. Apr. 24, 2019)).) In addition to finding that the *Rooker-Feldman* Doctrine applied, the Court concluded that there was no waiver by Defendant, Defendant did not assert inconsistent positions, and Plaintiffs did not demonstrate injury-causing reliance on Defendant's representations. (B.C.D.H. Tr. 42:18–43:14.) Pursuant to Rule 12(b)(1), the Court, in turn, dismissed Count I with prejudice.

Count II, Plaintiffs' fraud claim, was then analyzed in the context of the heightened pleading standard under Rule 9(b), and Judge Gambardella determined that Defendant did not perpetrate an intentional fraud on Plaintiffs, and that further re-pleading would be futile, thus the claim was dismissed with prejudice. (B.C.D.H. Tr. 43:17–44:2.) The Court then reviewed

---

[9] The transcript appears to have two scrivener's errors concerning the dates of the filings. This Court is citing the dates as 2017 and 2018, not 2007 and 2008, as the transcript indicates.

Plaintiffs' claim of fraud upon the Court, Count III, and found that Plaintiffs failed to state a plausible claim, Defendants did not perpetrate intentional fraud on the Court, and the Court was not deceived, and further noted that re-pleading would be futile, thus the claim was dismissed with prejudice. (B.C.D.H. Tr. 45:1–25.) Finally, the Court considered Plaintiffs' New Jersey Consumer Fraud Act claim, Count IV, and found that the arguments Plaintiffs presented were barred by the *Rooker-Feldman* Doctrine and should have been brought in state court, thus the claim was dismissed pursuant to both Rule 12(b)(1) and Rule 12(b)(6). (B.C.D.H. Tr. 46:1–25.)

## II.    LEGAL STANDARD

This Court "reviews the Bankruptcy Court's legal determinations *de novo*, its factual findings for clear error, and its exercises of discretion for abuse thereof." *Stonington Partners, Inc. v. Lernout & Hauspie Speech Prod. N.V.*, 310 F.3d 118, 122 (3d Cir. 2002) (quoting *In re Pro. Ins. Mgmt.*, 285 F.3d 268, 282–83 (3d Cir.2002)). A factual finding is clearly erroneous if, in reviewing all the evidence, the reviewing court is left with the "definite and firm conviction that a mistake has been committed," even if there is evidence to support the finding. *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d. Cir. 1992) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "A bankruptcy court abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts." *Stonington Partners, Inc.*, 310 F.3d at 122 (quoting *In re O'Brien Envtl. Energy, Inc.*, 188 F.3d 116, 122 (3d. Cir. 1999)).

## III.    DISCUSSION

Appellants request that this Court review the Bankruptcy Court's reconsideration of the Dismissal Order. (*See* D.E. 1.) Appellants additionally ask this Court to review the decision the Bankruptcy Court made in the Dismissal Order, and request the extraordinary remedy of directing the Clerk to "reverse the [d]ecision of the Bankruptcy Court dismissing the Amended [Adversary

Proceeding Complaint], [Motion to Dismiss,] and Reconsideration, and permit the Complaint to be litigated into discovery and beyond . . . ." (D.E. 11 at 8, 35; D.E. 16 at 6, 22.)  Appellants contend that "[t]he sole issue of the Appeal in the District Court of New Jersey . . . is whether the Bankruptcy Court . . . correctly applied the *Rooker-Feldman* [D]octrine in dismissing the Amended Adversary Proceeding Complaint . . . and denying the Reconsideration Motion that followed." (D.E. 16 at 6.)  Appellants' contention, however, is inaccurate; the sole issue for this Court to consider is whether the Bankruptcy Court—in issuing the Order pertaining to the Motion to Reconsider—misapplied the law, erred in its factual findings, or abused its discretion.  *Stonington Partners, Inc.*, 310 F.3d at 122.  This Court finds that the Bankruptcy Court appropriately decided the Order at issue and, by extension, the underlying Dismissal Order.

This Court first addresses the Bankruptcy Court's decision concerning the timing of the reconsideration motion.  "It is '[t]he Bankruptcy Rules and Forms [that] govern procedure in cases under [the Bankruptcy] Code.'"  *In re Doe*, 681 Fed. Appx. 106, 108 (3d Cir. 2017) (quoting FED. R. BANKR. P. 1001)).  "[U]nder the Bankruptcy Rules, a party has only 14 days to file a Rule 59(e) motion, not the 28 days permitted by the Federal Rules of Civil Procedure."  *Id.* (citing FED. R. BANKR. P. 9023 (14 days); FED. R. CIV. P. 59(e) (28 days)).  Here, the Dismissal Order was dated December 2, 2021, which meant that the deadline for a reconsideration motion under Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 9023 was December 16, 2021.  (*See* D.E. 15, Ex. P.)  On December 22, 2021—after the deadline already passed, Appellants requested leave for additional time to file a late motion, but then proceeded to file the Motion on January 3, 2022, without awaiting a decision on such leave.  (*See* D.E. 11, Ex. B; D.E. 15, Ex. Q.)

The Bankruptcy Court thereafter reviewed Appellants' Motion to Reconsider.  In deciding the Motion, the Court set forth a thorough record of its reasons for denying the Motion.  A

8

transcript excerpt Appellants provided via hard copy to this Court reveals that the Bankruptcy Court discussed the timing of the Motion under Rule 59(e) and Bankruptcy Rule 9023, and in relation to Bankruptcy Rule 9016, which "pertains in part to extending time to file a motion." (D.E. 11, Ex. F (Transcript Excerpt of February 9, 2022 Bankruptcy Court reconsideration hearing ("B.C.R.H. Tr.")).) The Court analyzed whether Appellants' failure to timely file the Motion stemmed from "excusable neglect," which a party must show when requesting that the Court accept a late-filed motion. (B.C.R.H. Tr. 5:2–7:9.) The Court considered counsel's reasons for the tardy filing—"both personal and professional reasons"—and found that Appellants had not provided "a necessary demonstration of excusable neglect for extension of the deadline." (B.C.R.H. Tr. 7:10–8:8.)

After finding that the Motion to Reconsider was not timely filed, the Court proceeded to explain that even had the Motion been timely filed, "the Court is of the opinion that the motion for reconsideration would be denied on the merits." (B.C.R.H. Tr. 9:6–10.) Judge Gambardella noted that "[t]o prevail on a motion for reconsideration[,] the movant must show that there was newly available evidence [or a] limiting change in controlling law" that prompts the need for the Court to "correct a clear error of law to prevent manifest injustice." (B.C.R.H. Tr. 9:10–13.) She further observed that she had the discretion to grant or deny a motion for reconsideration, explained that such a motion is not "an opportunity for a second bite at the apple," and pointed out that "[r]econsideration has been characterized as an extraordinary remedy which should be sparingly used and limited to exceptional circumstances." (B.C.R.H. Tr. 9:18–10:8 (citing *In re Christy*, 222 B.R. 64, 67–68 (Bankr. D.N.J. 1998); *Database Am., Inc. v. Bellsouth Advert. and Publ'g Corp.*, 825 F. Supp. 1216, 1220 (D.N.J. 1993)).)

The Bankruptcy Court found—and Appellants evidently conceded—that there was no new evidence for the Court to consider, (B.C.R.H. Tr. 10:9–11:1), and there was no "intervening change in controlling law," (B.C.R.H. Tr. 11:1–4). Appellants contended that the Court needed to "correct a clear error of law to prevent manifest injustice," in relation to the Court's analysis of the *Rooker-Feldman* Doctrine. (B.C.R.H. Tr. 11:4–8.) In response, the Court reviewed its October 1, 2021 decision and revisited the comprehensive analysis it performed under the *Rooker-Feldman* Doctrine. Again, the Court discussed the four factors of the Doctrine and reiterated its analysis of each of the factors, including: (1) "the federal plaintiff[, Appellants,] lost in state court" and "was subject to a final judgment of foreclosure entered against them on May 5, 2017"; (2) "[Appellants] complain of the injuries caused by the judgment and they are challenging standing to the foreclosure," and Appellants "are challenging representations or misrepresentations made by the secured creditor in the state court action, . . . ."; (3) "the foreclosure judgment was entered in 2017" and Appellants' "Chapter petition [was filed] in 2018 and the adversary proceeding was filed in 2020"; and (4) "[Appellants] are requesting [for] this Court, in fact, to review and reject the 2017 foreclosure judgment and to look back behind the validity of the foreclosure judgment, and the subsequent judgment that was entered by the Superior Court of New Jersey." (B.C.R.H. Tr. 11:9–13:15.) The Court further discussed its ruling concerning Appellants' fraud claims and reiterated the absence of any alleged fraud. (B.C.R.H. Tr. 14:5–13.)

While the Bankruptcy Court correctly declined to reconsider the Dismissal Order based on failure to submit a timely Motion, it went above and beyond its duty and recorded cogent and detailed reasons for denying the Motion to Reconsider based on the merits. The detailed analysis set forth on the record served to reiterate the thoughtful and comprehensive reasons undergirding the Dismissal Order, and clearly and concisely elucidated Appellants' inability to overcome the

*Rooker-Feldman* Doctrine. While Appellants argue that the Court failed to address each factor of the *Rooker-Feldman* Doctrine, that assertion is patently inaccurate. Appellants conflate the subject of this Appeal—the Motion to Reconsider—with the subject of the Motion to Reconsider—the Dismissal Order—and argue that this Court should essentially overturn the Dismissal Order. That Order is not at issue at this juncture, but if it were, the reasons for declining to overturn the Court's decision on the Motion to Reconsider subsume the reasons for declining to overturn the Dismissal Order: Judge Gambardella comprehensively discussed each facet of the *Rooker-Feldman* Doctrine and issued a decision that comports with applicable law.

   The Bankruptcy Court not only addressed each of the factors of the *Rooker-Feldman* Doctrine, but it also correctly found that each element applied to Appellants' claim, and that the matter must be dismissed pursuant to Rule 12(b)(1). After reviewing each of the factors, this Court concurs that, per factor one, Appellants lost in state court and were subject to the foreclosure judgment entered against them on May 5, 2017; per factor two, Appellants complained of injury caused by the foreclosure judgment and challenged the underlying validity of the foreclosure; per factor three, the foreclosure judgment was rendered in 2017, before the federal suit was filed in 2018 and the adversary proceeding was filed in 2020; and per factor four, Appellants are inviting the Court to review the validity of the foreclosure proceeding and the subsequent foreclosure judgment. Appellants' arguments concerning the *Rooker-Feldman* Doctrine are without merit, and the Bankruptcy Court did not misapply the law in rendering its Dismissal Order. Consequently, this Court finds that the Bankruptcy Court did not misapply the law, did not err in its factual findings, and did not abuse its discretion when it denied Appellants' Motion to Reconsider. *See Stonington Partners, Inc.*, 310 F.3d at 122.

## IV. CONCLUSION

For the reasons set forth above, this Court **AFFIRMS** the Bankruptcy Court's March 3, 2022 Order. An Order consistent with this Opinion follows.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:     Clerk
cc:       Parties